UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARZUQ AL-HAKIM,**

    **Plaintiff,**

vs.                                             Case No.: 8:08-CV-01370-T-17-EAJ

**SGT. ASHLEY ROBERTS,**
in her individual and official
capacity as Tampa Police Officer,
**DAVID HASSETT,** in his
individual and official capacity as
Tampa Police Officer,
**CITY OF TAMPA,** as employer.

    **Defendants.**

_____/

## ORDER

**THIS CAUSE** is before the Court on *pro se* Plaintiff Marzuq Al-Hakim's ("Plaintiff") Motion for Judgment on the Pleadings (Dkt. 32), response thereto filed by the Defendants Sgt. Ashley Roberts and Officer David Hassett of the Tampa Police Department, and the City of Tampa as employer, ("Defendants")(Dkt. 37); and Defendants Motion for Summary Judgment (Dkt. 33).

A review of the entire record, including motions and exhibits demonstrate that Plaintiff's Motion for Judgment on the Pleadings must be **DENIED** and Defendant's Motion for Summary Judgment must be **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff originally filed this civil action on June 25, 2008, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Case No.: 08-CA-l4232 (Dkt. 2). On July 16, 2008, Defendants removed this action to the United States District Court for the Middle District of Florida, on the basis of Federal Question Jurisdiction (Dkt. 1). Plaintiff filed a Motion for Judgment on the Pleadings on April 30, 2009. (Dkt. 32). Subsequently, on May 6, 2009, Defendants filed a Motion for Summary Judgment. (Dkt. 33). Defendants further filed a Response to Plaintiff's Motion for Judgment on the Pleadings on June 8, 2009. (Dkt. 37).

## STATEMENT OF THE CASE

Plaintiff alleges claims under 42 U.S.C. § 1983 against Sgt. Ashley Roberts and Officer David Hassett for false arrest, abuse of process, and malicious prosecution. (Dkt. 2). Plaintiff further alleges claims against the City of Tampa for a Fourth Amendment violation based on failure to train Sgt. Ashley Roberts and Officer David Hassett in discriminatation issues. *Id*.

## UNDISPUTED FACTS

In November 2007, Plaintiff was at home at 1115 E. Eskimo Avenue when officers of the Tampa Police Department ("TPD") arrived to try and execute an arrest warrant for his brother, Reginald Harris. The officers entered the home to look for Harris and not finding him there, left the residence. Believing the officers were illegally within the home, Plaintiff called 911 to request a supervisor. A female sergeant arrived at the residence in response to the Plaintiff's

call[1]. (Dkt. 2).

Plaintiff was involved in another incident with the TPD in February 2008. On February 1, 2008, at approximately 6:46 pm, Cpl. John Womack of the TPD, attempted to stop a car he observed commit traffic infractions without success. Minutes later, Cpl. Womack came upon the same car on Busch Blvd and observed it had been abandoned by the driver. The car was registered to Reginald Harris ("Harris") of 1115 E. Eskimo Avenue. Officer Hassett was directed to respond to the address to locate the registered owner and gather any information on the driver. *Id*.

At approximately 7:30 pm, Officer Hassett arrived at the listed address and met with Harris who advised that he had loaned his car to his cousin, Tavares Owens. Officer Hassett asked to search the residence for Owens and Harris consented. Harris warned Officer Hassett that his brother, the Plaintiff, was in the home and not likely to be cooperative. Indeed, Plaintiff was uncooperative and refused to let the officers search the home; he became upset at Officer Hassett for allowing Harris to yell for his mother. Officer Hassett did not enter the home and consequently left the area. *Id*.

At approximately 8:39 pm, Cpl. Womack and Officer Hassett returned to the address in reference to a disturbance call. Apparently, a call had been made to 911, by Plaintiff, and the 911 operator could hear a male yelling in the background. (Dkt. 32). Plaintiff placed the call to 911 to speak with a Captain or Supervisor about Officer Hassett. *Id*. While en route, dispatch advised Officer Hassett and Cpl. Womack that the Plaintiff had called again and requested a

---

[1] Although Plaintiff alleges Sgt. Roberts was the supervisor who responded, TPD internal affairs documents, submitted by the Plaintiff, reveal it was another female sergeant, Sgt. Demesa, who responded to the residence. (Dkt. 32). Defendants, however, do not dispute the fact that a female sergeant responded to the Plaintiff's call. (Dkt. 33).

supervisor respond to his home. Upon arrival, Cpl. Womack met with Plaintiff and advised him that he was Officer Hassett's supervisor. Plaintiff stated he did not want to speak with Cpl. Womack and proceeded to dial 911 on his cordless phone. When asked why he was calling 911, Plaintiff stated he wanted a captain to come to his house. Plaintiff asked the 911 operator, "Where is the captain? I asked for a captain." *Id*. Plaintiff was subsequently arrested for Misuse of 911, F.S. § 365.171. Soon thereafter, Sgt. Roberts arrived at the scene and spoke with the Plaintiff about the incident. Plaintiff admitted he did not call 911 to report a crime or an emergency; rather, he called to request a captain respond to his home. (Dkt. 2). Sgt. Roberts reviewed the arrest affidavit and determined sufficient probable cause existed for the arrest. (Dkt. 32).

Plaintiff was released on bond on February 1, 2008. *Id*. The State Attorney's Office charged Plaintiff in case number 08-cm-002289 under a different statute: making harassing telephone calls F.S. § 365.16 (Dkt. 2). On February 28, 2008, the State Attorney's office entered a Nolle Pros for the harassing telephone call charge. *Id*.

## **STANDARD OF REVIEW**

After the close of the pleadings, any party may move for judgment on the pleadings if trial is not delayed. Fed.R.Civ.P. 12(c). However, on a motion for judgment on the pleadings, the Court is not allowed to consider any matter that is outside of the pleadings. Pursuant to Federal Rule 12(d), if matters outside of the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56. In his motion for judgment on the pleadings (Dkt. 32), Plaintiff submitted several TPD internal affairs

4

documents consisting of correspondences and transcripts of interviews which fall outside of his original pleadings. Since these documents have not been excluded by this Court, Plaintiff's Rule 12(c) motion must, and will be, treated as a Rule 56 motion for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing *Celotex Corp. v. Catrett*, 477 US. 317, 323 (1986)); See also *Edwards v. Acadia Really Trust, Inc.*, 141 F.Supp.2d 1340, 1344-45 (M.D. Fla. 2001). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In ruling on a motion for summary judgment, the court construes the facts and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 242. However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In ruling on a motion for summary judgment, "the function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is an issue for trial." *Edwards*, 141 F.Supp.2d at 1345. When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Garguilo v. G.M Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1997).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

# DISCUSSION

   I. Nolle Prosequi

Plaintiff contends in his motion that since the misdemeanor charges against him were "nolle prossed," he is entitled to summary judgment as a matter of law in the present case (Dkt. 32). The words "nolle prosequi" are a Latin expression which translated literally mean "to be unwilling to prosecute". *Wilson v. Renfroe*, 91 So. 2d 857, 859 (Fla. 1956). At common law the State has the discretion to announce a nolle prosequi at any time prior to the swearing of the jury to try the cause. *Id* at 859. See also *State v. Aguilar*, 987 So. 2d 1233, 1235 (Fla. Dist. Ct. App. 5th Dist. 2008). Nolle prosequi, if entered before jeopardy attaches, neither operates as an acquittal nor prevents further prosecution of the offense. *State v. Jenkins*, 762 So. 2d 535, 536 (Fla. Dist. Ct. App. 4th Dist. 2000)(citing *Bucolo v. Adkins*, 424 U.S. 641, 642 (U.S. 1976)). It is permissible for the state to re-file charges it has nolle prossed, so long as it complies with the applicable statute of limitations and the speedy trial rule. *Sadler* at 305(citing *State v. Hurd*, 739 So. 2d 1226, 1228 (Fla. Dist. Ct. App. 2d Dist. 1999)).

Plaintiff's contentions are meritless. The entry of "nolle prossed" on a disposition sheet (Dkt. 32) is not a judgment by a state court. As discussed above, a nolle prosse is merely a discretionary decision by the State Attorney to be unwilling to prosecute; it does not operate as an acquittal nor does it bar further prosecution. Plaintiff is not entitled to relief based on the entry of 'nolle prossed' on a misdemeanor disposition sheet from Hillsborough County Criminal Division.

II. Qualified Immunity

Section 1983 imposes civil liability on any person who, under color of state law, "subjects, or causes to be subjected" a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (U.S. 2009). As long as an official's conduct is not unlawful, the doctrine of qualified immunity exempts government official from damage suits to enable them to perform their responsibilities without threats of liability. *Hutton v. Strickland*, 919 F.2d 1531, 1536 (11th Cir. 1990).

Qualified immunity is not merely a defense to liability but rather an immunity from a lawsuit. *Atterbury v. City of Miami Police Dep't*, 2009 U.S. App. LEXIS 7690 (11th Cir. Fla. Apr. 2, 2009)(citing *Pearson*, 129 S. Ct. at 815). Qualified immunity protects government officials performing discretionary functions as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharp v. Fisher*, 532 F.3d 1180, 1183 (11th Cir. 2008)(citing *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007)). Qualified immunity relieves government officials from the need to "constantly err on the side of caution" by protecting them from liability and the burdens of litigation. *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003)(citations omitted). However, "it does not offer protection 'if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" *Id.* (citing *Lambert v. Fulton County*, 253 F.3d 588, 596 (11th Cir.

2001)).

"It is well established that a plaintiff seeking to overcome the defendant's privilege of qualified immunity must show: (1) that the officer violated her federal constitutional or statutory rights, and (2) that those rights were clearly established at the time the officer acted." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). The threshold question is whether the facts alleged, taken in the light most favorable to the plaintiff, establish a constitutional violation at all. *Holmes*, 321 F.3d at 1077. If no constitutional violation is established, then no further inquiries regarding qualified immunity are needed. *Id*. If, on the other hand, the facts establish a constitutional violation, then the plaintiff must further show that the right was "clearly established." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "For a constitutional right to be clearly established, the contours of that right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. '"*Id*. (citing *Anderson v. Creighton*, 483 US. 635, 640 (1987).

Plaintiff alleges that Defendants violated his Fourth Amendment right to be free from unreasonable search and seizure by arresting him without probable cause. (Dkt. 2). Defendants assert their conduct did not constitute the type of abuse of government power that is cognizable under Section 1983 and that they are shielded from liability by the doctrine of qualified immunity. (Dkt. 33). All three of Plaintiff's Section §1983 claims, false arrest, abuse of process and malicious prosecution, hinge on whether the officers had probable cause to arrest him.

In the context of probable cause to seek an arrest warrant, an officer is protected by qualified immunity if there is "arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). The Court is to apply an objective standard to
9

determine whether any officer could have found probable cause under the totality of the circumstances. *Id*. It is established that arguable probable cause, not actual probable cause, is the standard that governs the qualified immunity inquiry. *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999)(citing *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)). Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Thus, an officer must have something more than mere suspicion but he may have less than convincing proof. *Atterbury*, 2009 U.S. App. LEXIS 7690 at *9 (citations omitted). What is important for qualified immunity purposes is "the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." *Jones*, 174 F.3d at 1283 (citing *Hunter v. Bryant*, 502 US. 224, 227 (1991)).

  A. False Arrest

  An arrest without probable cause violates the right to be free from an unreasonable seizure. *Durruzhy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003). However, the existence of probable causes creates an absolute bar to a Section 1983 action for false arrest. *Marx v. Gurnbinner*, 905 F. 2d 1503 (11th Cir. 1990). An officer is entitled to qualified immunity on a Section 1983 claim of false arrest where the officer had "arguable probable cause," or where "reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest" the plaintiff. *Redd v. City of Enterprise, Alabama*, 140 F.3d 1378, 1382 (11th Cir. 1998), *Strock v. City of Coral Springs*, 354 F.3d 1307, 1315 (11th Cir. 2003). The key element in "arguable probable cause" is what information the officer knew or had at the time of the arrest to warrant a prudent person to

believe that the suspect had committed an offense. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *Strock*, 354 F.3d at 1315; *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Probable cause is purely a matter of law for the court where material facts are undisputed. *Martinez v. Brink's Inc.*, 2006 WL 551239 at *267 (11th Cir. 2006).

Plaintiff was arrested for Misuse of 911 pursuant to F.S. § 365.171(13). (Dkt. 2). Plaintiff attached an offense report, "Agency Report 2008-065639," to his Complaint and a copy of the criminal report affidavit for said arrest. *Id*. When documents are attached to a pleading they are considered a part of the pleading. However, when there is a conflict between the Complaint and the supporting documents, the supporting documents control. *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 (11th Cir. Fla. 2008)(citing *Tucker v.Nat'l Linen Service Corp.*, 200 F. 2d 858, 864 (5th Cir. 1953)). Thus, the police report must be read in conjunction with the criminal report affidavit and Plaintiff's own admissions within the Complaint itself.

Even when viewed in the light most favorable to Plaintiff, the facts reveal TPD had sufficient actual and arguable probable cause to conduct an arrest for Misuse of 911. The evidence establishes that: after Officer Hassett had left the Plaintiff's residence, Dispatch advised both Officer Hassett and Cpl. Womack that the Plaintiff had called 911 twice, requesting a supervisor or a captain. When Officer Hassett met with Plaintiff, he and Cpl. Womack observed Plaintiff make yet another call to 911 requesting a captain for a third time. When asked why he called 911, Plaintiff stated he wanted a captain to come to his house. (Dkt. 32). Furthermore, Plaintiff admitted he did not call 911 to report a crime or an emergency; rather, he called to request a Captain respond to his home. (Dkt. 2). Cpl. Womack directed Officer Hassett to arrest Plaintiff for Misuse of 911. Sgt. Roberts arrived at the scene, reviewed the arrest

11

affidavit and determined sufficient probable cause existed for the arrest. (Dkt. 32).

The facts are more than sufficient to warrant a reasonable belief that Plaintiff had committed an offense. A reasonable officer in the same circumstances and possessing the same knowledge could have believed that probable cause existed to arrest. Accordingly, Plaintiff's arrest was founded on probable cause. Based on the conclusion that TPD officers had actual and arguable probable cause to arrest Plaintiff; the absence of a constitutional violation forecloses Plaintiff's claims of false arrest. *Atterbury*, 2009 U.S. App. LEXIS 7690 at *13. Because Plaintiff's arrest was supported by probable cause, Plaintiff fails to satisfy the required element that the original proceeding lacked probable cause. See *Kingsland*, 382 F.3d at 1234. Thus, Plaintiffs allegations of false arrest are without merit.

B. Abuse of Process

Plaintiff alleges in his Complaint that David Hassett and Sgt. Roberts abused the criminal court process to put Plaintiff in jail with an unlawful objective or motive. (Dkt.2). "A cause of action for abuse of process requires proof that: (1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's actions." *Artubel v. Colonial Bank Group, Inc.*, 2008 U.S. Dist. LEXIS 60781 at *66 (M.D. Fla. Aug. 8, 2008)(citing *Hardrick v. Harnol*, 795 So. 2d 1107, 1111 n.2 (Fla. 5th DCA 2001). Abuse of process involves the use of criminal or civil legal proceedings against another primarily to accomplish a purpose for which it was not designed. *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3rd DCA 1984). There is no abuse of process when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive

12

of spite or ulterior purpose. *Roy v. Bd. of County Comm'rs Walton County*, 2007 U.S. Dist. LEXIS 83501 at *18 (N.D. Fla. Nov. 9, 2007)(citing *Cline v. Flagler Sales Carp*, 207 So. 2d 709 (Fla. 3d DCA 1968)).

In the instant case, Plaintiff was arrested and charged for violating the law with the intent to have him prosecuted for such violation - which is the designed purpose and intent of the criminal justice process. Even a pure spite motive is not sufficient where process is used only to accomplish its intended purpose. *Bothmann*, 458 so. 2d at 1169. Thus, Plaintiffs allegations of abuse of process are without merit.

C. Malicious Prosecution

To prevail on a § 1983 malicious prosecution claim, a plaintiff must prove "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland*, 382 F.3d at 1234. One of the six requirements for a common law tort of malicious prosecution under Florida law is "an absence of probable cause for the original proceeding."[2] *Id*. The existence of probable cause or arguable probable cause, and in particular the facts showing that probable cause existed, contradicts any suggestion of malicious intent or bad faith. *Wood v. Kesler*, 323 F. 3d 872, 884 (11th Cir. 2003). The existence of probable cause in the present case defeats Plaintiff's claim of malicious prosecution. See *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008). Based on the conclusion that TPD officers had actual and arguable probable cause to arrest Plaintiff, Plaintiffs malicious prosecution claim is also without merit.

---

[2] The six elements are: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." Id.

Accordingly, Officer Hassett and Sgt. Roberts are immune from suit on Plaintiff's § 1983 claims of false arrest, abuse of process and malicious prosecution.

### IV. Illegal Entry

Plaintiff alleges that Officer David Hassett unlawfully entered his home in November 2007. (Dkt. 2). Plaintiff further alleges that the officer had an arrest warrant for Harris, Plaintiff's brother, which was used as a pretext for entry into the home. *Id*. The Fourth Amendment requires that an arrest warrant is necessary before an officer can enter a home to make an arrest. *Welsh v. Wisconsin*, 466 U.S. 740 (1984); *Wike v. State*, 596 So. 2d 1020, 1024 (Fla. 1992). Although both Officer Hassett and Sgt. Roberts deny being at Plaintiff's home in November 2007 (Dkt. 33), any officer present at the residence with an arrest warrant, whether it was indeed Officer Hassett or any other TPD officer, would have had the requisite legal authority to enter the home to make the arrest. Plaintiff cannot prove this claim; the supplemental documents attached to the Plaintiff's motion indicates that Sgt. Anne Marie Demesa, not Sgt. Roberts, was the supervisor who responded to the Plaintiff`s home in November 2007. Furthermore, Sgt. Demesa, under oath, stated that her officers had made contact with and were granted entry by other occupants in the home in November 2007. (Dkt. 32).

Although the Complaint is vague, it appears Plaintiff further alleges that Officer Hassett entered his home illegally on February 1, 2008, without a warrant. (Dkt. 2). However, Plaintiff also alleges that he refused to allow the officers to enter the home. *Id*. When there is a conflict between the Complaint and the supporting documents, the supporting documents control. *Friedman*, 520 F.3d at 1295. The offense report attached to the Complaint, by the Plaintiff,

indicates that the Officer Hassett met Plaintiff twice on February 1, 2008, and during both meetings, Officer Hassett did not enter the Plaintiff's home. (Dkt. 2). Plaintiff revoked the consent given by his brother Harris during the first meeting and the second meeting and arrest occurred on the front porch of the house. *Id*. Thus, the facts do not support Plaintiff's allegation that an illegal entry occurred either in November 2007 or on February 1, 2008.

      V.   Supervisory Liability - Sgt. Ashley Roberts

Supervisory Liability under Section 1983 can only be demonstrated (1) when the supervisor has personally participated in the alleged violation or (2) when the supervisor's actions are casually connected to the alleged violation of federal statutory or federal constitutional law. *Lloyd v. Tassell*, 2009 U.S. App. LEXIS 1531at *12 (11th Cir. Fla. Jan. 27, 2009); *Brown v. Crawford*, 906 F 2d 667, 671 (11th Cir. 1990). A causal connection is established when: (1) the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that led to the alleged deprivation, and he failed to do so; (2) the supervisor's policy or custom resulted in deliberate indifference; (3) the supervisor directed the subordinate to act unlawfully; or (4) the supervisor knew the subordinate would act unlawfully and failed to stop the unlawful action. *Id*.

Plaintiff alleges that Sgt. Roberts personally participated in the events in November 2007 and February 2008. Plaintiff alleges that Sgt. Roberts came to his home in November 2007 and made the officers leave, and that she is 'in collision with their illegal entry and misconduct.' (Dkt. 2). Plaintiff cannot prove this claim either; the supplemental documents indicate that Sgt. Anne Marie Demesa, not Sgt. Roberts, was the supervisor who responded to the Plaintiff`s home in November 2007. Also, Sgt. Demesa, under oath, stated that she did not make any of the

officers leave nor did she agree with the Plaintiff that the officers had conducted themselves in an improper manner. (Dkt. 33).

Plaintiff also alleges that Sgt. Roberts allowed "trumped up charges to be placed against him" on February l, 2008. (Dkt. 2). The existence of probable cause is a bar to a claim for false arrest. *Marx*, 905 F. 2d at 1503. Probable cause also precludes a claim for malicious prosecution. *Kjellsen*, 517 F.3d at 1237. As previously discussed, probable cause existed to arrest the Plaintiff for mis/using 911. Moreover, the evidence reveals that Sgt. Roberts came to the scene after Plaintiff had been placed under arrest; therefore, Sgt. Roberts neither made the decision to arrest Plaintiff or participate in his physical arrest. Plaintiff has failed to show Sgt. Roberts has personally participated in the alleged violation or that her actions are casually connected to the alleged violation of law.

VI. Municipal Liability - City of Tampa

Plaintiff alleges that the City of Tampa has an official policy that allows police officers to enter the home of black citizens without search warrants. (Dkt. 2). Plaintiff further alleges that TPD Standard Operating Procedure ("SOP") 821 was the moving force behind this constitutional violation. A municipality such as a city may only be held liable under section 1983 when the city itself deprives an individual of a constitutional right, and, thus, for an individual deprived of a constitutional right to have recourse against a municipality under section 1983, he must show that he was harmed by a municipal policy or custom. A plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury." *Id* at 826 (citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978)). Section 1983 does not provide for vicarious liability. *Harvey v. City of Stuart*, 296 Fed. Appx. 824, 826 (11th Cir. Fla. 2008). The City is not liable for acts of

16

employees under the theory of respondeat superior, and, thus, the Plaintiff is required to point to a policy or custom that has lead to his alleged violations. *Cuesta v. School Board of Miami-Dade County*, 285 F.3d 962 (11th Cir. 2002).

"To impose § 1983 liability on a municipality, a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *G.C. v. Sch. Bd. of Seminole County*, 2009 U.S. Dist. LEXIS 48542 at *30 (M.D. Fla. June 9, 2009)(citing *McDowell v. Brown*, 392 F. 3d 1283, 1289 (11th Cir. 2004)). A plaintiff must prove a course of action that was consciously chosen or 'official sanctioned or ordered [sic]." *Riebsame v. Prince*, 267 F. Supp.2d 1225, 1233 (MD. Fla. 2003)(citing *Pembaur v. City of Cinncinnati*, 475 US. 469, 106 S. Ct. 1292 (1986)). The simple mention of 'policy and/or custom' is not enough, for a plaintiff must do something more than simply allege that such an official policy exists. *Moore v. Miami-Dade County*, 2007 U.S. Dist. LEXIS 95892 at *17 (S.D. Fla. Dec. 9, 2007)(citing *Riebsame* 267 F. Supp.2d at 1233).

Plaintiff has simply made conclusory allegations and not met his burden of proof to support his allegations. Moreover, liability may not be imposed upon a municipality under 42 U.S.C. § 1983 for an injury solely based on the aberrant conduct of its employee(s), and the mere fact that a Plaintiff suffered a deprivation of federal rights at the hands of a municipal employee does not imply or prove that the municipality is culpable or caused the deprivation. *Bd of County Comm's v. Brown*, 520 U.S. 397 (1997). TPD SOP 821 is detailed and specific in its instruction and guidance to officers about constitutional requirements for Search and Seizure. (Dkt. 33). Plaintiff's failure to proffer competent evidence to support a finding that the City of

Tampa deprived Plaintiff of a constitutional right forecloses his ability to establish municipal liability against the City of Tampa.

Plaintiff alleges that the City of Tampa violated his constitutional rights by failing to train Ashley Roberts and David Hassett not to discriminate. (Dkt. 2). In order to establish municipal liability for failure to train, plaintiff must prove: (1) that the City had an inadequate training program; (2) that the City was on notice of the inadequacy; and (3) the City was deliberately indifferent to that need such that it can be called an official policy. *Kerr v. City of West Palm Beach*, 875 F. 2d 1546, 1555 (11th Cir. 1989). An alleged failure to train or supervise must evidence a deliberate indifference on the part of the City of Tampa to the rights of its inhabitants. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). In order to establish a deliberate indifference, the Plaintiff must provide some evidence that the City of Tampa knew of a need to train or supervise in a particular area but made a deliberate choice not to take any action. *Gold v. City of Miami*, 151 F. 3d 1346 (11th Cir. 1998). Without notice of a particular need to train or supervise, a municipality cannot be liable as a matter of law for a failure to do so. *Wright v. Sheppard*, 919 F. 2d 665 (1 lm Cir. 1990). Plaintiff merely alleges that the City failed to train Officer Roberts and Officer Hassett, but does not allege that the City knew of a need to train. Moreover, there is no evidentiary support for this claim other than Plaintiffs own allegations.

Plaintiff also alleges that the failure to train caused an equal protection violation. In order to prevail on an equal protection claim based upon the application of a facially neutral statute, it must be established that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the Plaintiff. *E &T Realty v. Strickland*, 830 F. 2d 1109 at 1109-1110

(11th Cir. 1987); See also *Levin v. City of Palm Beach Gardens*, 303 Fed. Appx. 847. Plaintiff has failed to establish the existence of any white citizen of Tampa who is similarly situated to him. Different treatment of dissimilarly situated person does not violate the Equal protection Clause. *E & T Realty*, 830 F2d at 1109. Plaintiff has failed to prove similarities which would allow a comparison to determine whether similar persons were treated differently. Thus, Plaintiff has also failed to prove how other citizens received different treatment by the City of Tampa.

Plaintiff's assertion is not supported by any evidence: there is no proof or evidence about a similar resident, who misused 911, being treated differently than the Plaintiff by the City or its employees. Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient; *GJR Investments, Inc. vs. County of Escambia*, 132 F. 3d 1359, 1367-68 (11th Cir. 1998); *Avirgan*, 932 F.2d at 1577. Because the Plaintiff has failed to sufficiently prove who was "similar" and how similar persons were treated "different" than he was; there is no evidence to determine by way of any distinction or comparison that any alleged unequal application of the criminal statute was due to discrimination against the Plaintiff.

## **CONCLUSION**

After reviewing the entire record, including motions and exhibits submitted by the parties, this Court finds that sufficient actual and arguable probable cause existed at the time of Plaintiff's arrest and Defendants are therefore entitled to qualified immunity on Plaintiff's § 1983 claims of false arrest, abuse of process and malicious prosecution. Plaintiff has also failed to meet his burden to establish a claim against the City of Tampa for any liability. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Dkt. 32) and converted Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment (Dkt. 33) is **GRANTED**. The Clerk of Court is directed to enter final judgment on behalf of Defendants and against Plaintiff. The Clerk is further directed to terminate any pending motions and close the file.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, this day of 13th July, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE